```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

TONI FAITH MORGAN,                 )
                                   )
               Plaintiff,          )
                                   )
                                   ) Case No. CIV-20-362-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
               Defendant.          )
```

**OPINION AND ORDER**

Plaintiff Toni Faith Morgan (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. She has a high school education plus one year of college and worked in the past as a department manager, general office clerk, sales clerk, assistant store manager, security officer, and retail store manager. Claimant alleges an inability to work beginning on January 3, 2017, due to limitations resulting from spondylosis with radiculopathy in the lumbar region, intervertebral disc degeneration in the lumbar region, cervicalgia, post-traumatic stress disorder ("PTSD"), bipolar type 2, clinical depression, and general anxiety.

**Procedural History**

On January 30, 2019, Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her application was denied initially and upon reconsideration. On February 4, 2020, ALJ Jeffrey S. Wolfe conducted an administrative hearing in Tulsa, Oklahoma, at which Claimant participated. On April 8, 2020, ALJ Wolfe entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 11, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

**Errors Alleged for Review**

Claimant alleges that the ALJ committed error by failing to follow the required legal standards resulting in a hypothetical question to the vocational expert ("VE"), an RFC, and a step-four analysis that was not supported by substantial evidence. She specifically alleges that the ALJ (1) failed to properly account

4

for her severe physical impairments in the hypothetical question to the VE and in the RFC, (2) failed to correctly analyze and account for Claimant's pain, including both exertional and nonexertional limitations that accompany her severe disc degeneration, resulting in an improper RFC, (3) failed to properly evaluate the medical evidence in the record, and (4) failed to include his own mental limitations in the hypothetical to the VE.

### Step Two and Step Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, depressive disorder, anxiety disorder, and PTSD. (Tr. 13). He determined Claimant could perform sedentary work with additional limitations, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking for two hours in an eight-hour workday, sitting six hours in an eight-hour workday, and performing semi-skilled work. (Tr. 15).

After consultation with the vocational expert ("VE"), the ALJ determined Claimant could perform her past relevant work as a general office clerk as she actually performed the job. (Tr. 24). As a result, the ALJ concluded Claimant had not been under a disability since January 3, 2017, her alleged onset date, through September 30, 2019, the date last insured. (Tr. 25).

Claimant argues that the ALJ erred by failing to properly account for her physical and mental impairments in the RFC

assessment and the hypothetical questions to the VE, including limitations resulting from degenerative disc disease, pain and range of motion limitations associated with her back and neck, intermittent headaches, and the ALJ's own limitations associated with her mental impairments.

To the extent Claimant is arguing that the ALJ failed to conclude that certain impairments were severe, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal when the ALJ proceeds to the next steps of the sequential evaluation. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Regarding Claimant's physical impairments, the ALJ specifically discussed the evidence associated with Claimant's back, neck, headaches, and resulting pain. (Tr. 18-23). Claimant

argues that the ALJ failed to discuss certain treatment notes regarding her decreased range of motion in the cervical spine, her worsening pain decreasing her activity, her antalgic gait and decreased range of motion of the lumbar spine, and the chronic pain she experienced. Although the ALJ is charged with "discuss[ing] the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects[,]" the ALJ was not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (citation omitted).

In his decision, the ALJ discussed in detail several of Claimant's doctor's visits, including notes from numerous visits with her treating physician Jack Weaver, M.D., from May of 2018 through December of 2019. (Tr. 18-23). For example, the ALJ discussed Claimant's reports of pain in her back and neck, pain radiating from Claimant's neck into her arm, headaches related to her neck pain, examination findings of decreased range of motion in the lumbar and cervical spines, antalgic gait, and tenderness in the back and neck, and her treatment with lumbar and cervical epidural steroid injections, which Claimant reported did not relieve her pain. Likewise, the ALJ also discussed from the same records evidence that Claimant repeatedly denied depression and anxiety, exhibited normal toe and heel walking, normal strength in the lower extremities, normal neurological testing in the

7

lumbosacral spine, normal posture and gait, and no instability in the lumbar or cervical spine. He also noted findings of normal strength in the upper extremities and normal neurological testing in the cervical spine. (Tr. 18-23, 322-25, 329-31, 338-40, 335-37, 341-43, 345-46, 347-48, 364-67, 371-74).

The ALJ also considered Claimant's complaints of chronic pain when assessing her RFC. He discussed her hearing testimony, statements made in her function report, and the third-party function report completed by Claimant's husband. (Tr. 14-16). He further considered the objective medical evidence, including Claimant's pain symptoms, pain management, and use of medication. (Tr. 18-22). He specifically discussed Claimant's examination by Dr. Weaver in December of 2019. She reportedly ran out of gabapentin and requested additional medication, indicating it had helped with her headaches and arm pain. She also reported that naproxen and cyclobenzaprine helped. She denied adverse effects. Claimant reportedly was no longer taking pain medication, but instead, Claimant reported she obtained a medical marijuana card and was using edibles. She reported they were helping. (Tr. 22). Based upon the record evidence, the ALJ determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but he found that her statements regarding the intensity, persistence, and limiting effects of symptoms were not entirely consistent with such evidence. (Tr. 14-23).

Regarding her mental impairments, Claimant contends that although the ALJ determined she had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace and mild limitations in interacting with others and adapting and managing herself, the ALJ failed to include these mental limitations in the RFC or the hypothetical questions to the VE.

The ALJ determined Claimant had severe mental impairments of depressive disorder, anxiety disorder, and PTSD. (Tr. 13). He assessed the "paragraph B" criteria and determined Claimant had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. He determined Claimant had mild limitations in interacting with others and in adapting or managing herself. The ALJ determined the "paragraph B" criteria were not satisfied because Claimant's mental impairments did not result in at least two marked limitations or one extreme limitation. (Tr. 14-15).

In the decision, the ALJ correctly noted that the limitations he identified when assessing the "paragraph B" criteria were not an RFC assessment, and that the mental RFC required a more detailed assessment of Claimant's mental functioning. (Tr. 15); *see* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are

9

used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Case law also supports that a finding of a limitation for the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. *See, e.g., Beasley v. Colvin*, 520 Fed. Appx. 748, 754 (10th Cir. 2013) (noting that "[t]he ALJ was under no obligation to include limitations in social functioning in [the] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."); *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

Here, the ALJ thoroughly discussed Claimant's testimony, the evidence of Claimant's mental health treatment, and the results of mental examinations. Many of Claimant's mental examinations were largely normal and/or she denied suffering from any depression, anxiety, psychosis, and dementia. (Tr. 17-18, 19-22). Moreover, although Dr. Weaver indicated in August of 2019 that Claimant's concentration was moderately impaired, he had previously completed a mental status form for Claimant in February of 2019, indicating that her mental status was "fine," she had the ability to think, reason, and respond, she could remember, comprehend, and carry out

instructions on an independent basis, and she had the ability to handle funds. (Tr. 321). The ALJ determined that the evidence did not support Claimant's complaints or the inclusion of any functional limitations beyond those included in the RFC assessment. (Tr. 18, 24).

The Court finds no error in the ALJ's consideration of the evidence of Claimant's physical and mental impairments, the hypothetical question to the VE, or the resulting RFC determination. The hypothetical question to the VE included only those limitations accepted by the ALJ and accurately reflected the RFC assessment. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (finding that in positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ); *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted). Moreover, the ALJ's decision demonstrates that he did not simply disregard the impairments when considering the RFC, and this Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

11

**Medical Opinion Evidence**

Claimant also contends that the ALJ failed to properly consider the medical and opinion evidence from her treating physician, Dr. Weaver. She contends the ALJ failed to properly analyze Dr. Weaver's opinion and thereby failed to include necessary limitations in the RFC assessment and in the hypothetical questions posed to the VE.

The medical opinion evidence in this case is subject to evaluation pursuant to 20 C.F.R. § 404.1520c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 404.1520c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. § 404.1520c(b); 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive

factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. § 404.1520c(b)(3).

The ALJ specifically discussed Dr. Weaver's treatment records of his visits with Claimant and the medical source statement he completed on August 12, 2019. (Tr. 18-24, 322-25, 329-31, 338-40, 335-37, 341-43, 345-46, 347-48, 357-60, 364-67, 371-74). In evaluating Dr. Weaver's opinion, the ALJ considered the consistency and supportability factors and determined Dr. Weaver's opinions were not persuasive. The ALJ specifically determined that Dr. Weaver's opinions were not persuasive because he did not explain his findings and because his findings were inconsistent with Claimant's examination findings in Dr. Weaver's treatment notes. (Tr. 23-24).

The Court finds no error in the ALJ's evaluation of Dr. Weaver's opinion. The ALJ discussed Dr. Weaver's examinations of Claimant in detail and then relied upon the appropriate factors when determining the opinion was not persuasive.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 11th day of January, 2023.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE